UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOU YANG, | Case No. 1:22-cv-00592-EPG |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 1, 16). |
| Defendant. | |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

Plaintiff presents the following issues:

1. Whether the ALJ erred in failing to consider the established impairment of posttraumatic stress disorder (PTSD) to be severe, resulting in an incomplete mental residual functional capacity assessment.

2. Whether the ALJ's error in concluding that Plaintiff could perform jobs that exceed the Plaintiff's mental RFC compels remand.

1

3. Whether the ALJ failed to offer legitimate reasons for rejecting Plaintiff's subjective complaints.

(ECF No. 16, p. 3). Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I. ANALYSIS

Plaintiff argues that the ALJ erred at Step Two by failing to consider whether Plaintiff's post-traumatic stress disorder ("PTSD") was a severe impairment. As a result, Plaintiff argues that the ALJ's mental RFC assessment failed to reflect limitations related to that impairment.

If a claimant has a medically determinable impairment (MDI), the ALJ must determine "whether [the] impairment(s) is severe," which is referred to as Step Two. 20 C.F.R. § 404.1521. A "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The "ability to do basic work activities," in turn, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b).

The Ninth Circuit has provided the following guidance regarding whether medically determinable impairments are severe under Step Two:

> An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." [*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)] (internal quotation marks omitted) (emphasis added); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985). Step two, then, is a "de minimis screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments. *See also Yuckert*, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

*Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 686.

For mental impairments, the ALJ considers four broad functional areas to rate the degree of any functional limitations, specifically, the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. § 416.920a(c)(3).

At Step Two, the ALJ found Plaintiff's major left knee joint disorder, degenerative disc disease, depression, anxiety, and asthma to be severe. (A.R. 20). The ALJ also concluded that Plaintiff's obesity was not a severe impairment. (*Id.*)

However, the ALJ did not address Plaintiff's PTSD at Step Two. Nor did the ALJ list PTSD among Plaintiff's impairments or provide any analysis for why her PTSD was not severe. Indeed, the ALJ did not address Plaintiff's PTSD anywhere in the opinion. By failing to address Plaintiff's PTSD at Step Two or provide any reasons for not finding her PTSD to be severe at Step Two, the ALJ erred.

The Commissioner does not argue otherwise, but rather argues that the ALJ's failure to address Plaintiff's PTSD at Step Two, or anywhere in the opinion, was harmless because Plaintiff's PTSD symptoms were considered by the ALJ in connection with Plaintiff's severe anxiety and severe depression. (ECF No. 21, p. 4). Further, the Commissioner contends that "even if the ALJ erred in not separately identifying Plaintiff's alleged PTSD, which the Commissioner does not concede, any such error was at most harmless, because the ALJ addressed all of Plaintiff's relevant symptoms and alleged functional limitations in assessing the RFC." (*Id.*, p. 7). According to the Commissioner, Plaintiff fails to identify any specific limitations attributable to her PTSD that were not accounted for in the RFC. (*Id.*, p. 3-4).

The Court thus looks to whether the ALJ's error in failing to address Plaintiff's PTSD at Step Two was harmless. Any error in failing to find an impairment severe at Step Two is harmless where the ALJ considers the limitations posed by the impairment in the Step Four analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The Court has reviewed the record and finds that there was substantial evidence that Plaintiff experienced symptoms relating to PTSD prior to the amended alleged onset date.[1] For

---

[1] At the hearing before the ALJ, the claimant amended the alleged onset date to January 13, 2019. (A.R. 18).

example, in a February 26, 2018 short-form mental evaluation, Plaintiff's treating psychologist, Dr. Ko Fang, noted Plaintiff's PTSD diagnosis. (A.R. 458). Dr. Fang also noted that Plaintiff's behavior disturbance was "irritable," and that both her recent and remote memory were severely impaired. (*Id.*) Dr. Fang's evaluation of Plaintiff's perception states that Plaintiff experiences auditory hallucinations, specifically that Plaintiff "[h]ears the voice of her dead [sic] son calling her name 'Mom, Mom'." (A.R. 459).

Further, records from after Plaintiff's amended alleged onset consistently identify PTSD related symptoms such as auditory hallucinations and flashbacks. A March 2019 assessment update prepared by Dr. Fang states that Plaintiff reports "that she continue[s] to grie[ve] the loss of her 20-year-old son due to heart attack. He died in her arm[s]. . .she was unable to call for help, i.e., and that she feels guilty. She reports having flashbacks, nervous[ness] and an[xiety] about her other children of their safety."[2] (A.R. 525). Further, Plaintiff reported to Dr. Fang that "she had 7 abortions and she believes the voices she has been hearing calling for her 'mom, mommy' were the voices of her unborn children that were aborted which [sic] they could not find their ways to the other realm." (*Id.*) Dr. Fang also noted that Plaintiff reported having trouble sleeping, lack of concentration, irritability, and poor memory. (*Id.*) In March 2020, Dr. Fang completed another assessment update that notes under Plaintiff's relevant history that she became an orphan at a very young age and that "[s]he was left to take care of herself when she was about 7 years. She says growing up she experiences much neglect, emotional abuse, starvation. She was able to escape the communist government with relatives from Laos to Thailand." (A.R. 531). In a February 2021 psychological evaluation, Dr. Fang extensively recounted Plaintiff's personal and medical history, noting that "[b]ased on test results, medical record, and clinical interview, she meets the Diagnostic and Statistical Manual of Mental Disorders Fourth Edition (DS-IV) diagnosis of Major Depressive Disorder and Posttraumatic Stress Disorder." (A.R. 618). Additionally, Dr. Megan Stafford, the consultative mental examiner whose opinion the ALJ found to be "marginally persuasive,"[3] confirmed that Plaintiff was diagnosed with PTSD. (A.R. 472) ("DSM-5 Diagnosis: 1. Major Depressive Disorder, Recurrent, Severe without Psychotic Features-per

---

[2] Elsewhere in the record, Dr. Fang indicates that Plaintiff's son died in 2011. (A.R. 618).
[3] The ALJ found Dr. Stafford's opinion "noteworthy" but only "marginally persuasive" because the examination took place eight-to-nine months prior to the alleged onset date. (A.R. 26-27).

4

documentation; 2. PTSD—per documentation."). Dr. Stafford's evaluation is dated May 8, 2018. (A.R. 469). Office records from Plaintiff's primary care physician, Dr. Long Thao, also indicate Plaintiff's PTSD diagnosis. (A.R. 621, 645).

It is not clear from the record that the ALJ adequately considered limitations regarding Plaintiff's PTSD in formulating the RFC in this case.  The ALJ's RFC is as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can occasionally work in cold temperature extremes and occasionally work around pulmonary irritants. The claimant can frequently stoop, kneel, crouch, or crawl. The claimant would be limited to simple and routine tasks, they would not be capable of complex judgment or analysis in the workplace. Can occasionally interact with coworkers and supervisors, but no public interaction, other than incidental contact. The claimant can perform production paced work, as long as commensurate with that found in a simple and routine environment, as previously defined. The claimant can adapt to changes in a workplace that are found in a simple and routine environment.

(A.R. 23).  There is nothing in this RFC that clearly incorporates the limitations in the record associated with Plaintiff's PTSD.

Additionally, in the ALJ's summary of the medical evidence, the ALJ states that the Plaintiff denied hallucination and suicidal ideation. (A.R. 25 ("She also denied hallucination and suicidal ideation.") (citing A.R. 574-75); A.R. 27-27 ("Her consistently good grooming, cooperative demeanor, and lack of hallucinations or suicidal ideation are also consistent with an ability to tolerate some social interactions.") (citing A.R. 508, 536-587)).   However, as discussed above, medical records indicate that Plaintiff suffered from hallucinations as a result of her PTSD. While not discussing these reports of hallucinations, the ALJ's decision cites to records from Dr. Fang where Plaintiff reports not experiencing any hallucinations. (*See* A.R. 25 (citing A.R. 574-75); A.R. 28 (citing A.R. 508, 536-587)). Upon review, one of the records cited by the ALJ is a March 18, 2019 progress note that states "[s]he reports auditory no [sic] visual hallucinations." (A.R. 508). In a progress note dated the same day, however, Dr. Fang notes that Plaintiff reports "transient suicidal ideation, flashbacks of her son when he died in her arms, hearing children's voices." (A.R. 510). Moreover, the fact that Plaintiff reported at one time that she had not experienced any hallucinations does not indicate that the ALJ considered Plaintiff's

consistent reports of hallucinations as a PTSD-related symptom.

Thus, it does not appear that the ALJ addressed symptoms related to PTSD, specifically Plaintiff's auditory hallucinations and flashbacks, when determining Plaintiff's RFC. Accordingly, the Court cannot conclude that the ALJ's failure to consider Plaintiff's PTSD when assessing the RFC was harmless. *See Loader v. Berryhill*, 722 Fed.Appx. 653, 655 (9th Cir. 2018) (finding harmful error where the ALJ completely failed to mention claimant's mental health impairments at Step Two and "the RFC itself says nothing at all about such impairments or their effects."); *see also Lorenzo B. v. Saul*, Case No. 19-cv-0786-AGS, 2020 WL 4732063, at * 2 (finding harmful Step Two error where the ALJ never discussed "[claimant's] reported PTSD symptoms of 'flashbacks,' 'hypervigilance', and 'startling more easily.'").

Accordingly, the Court finds remand warranted to address what, if any, additional limitations should be added to the RFC regarding Plaintiff's PTSD, and whether any change to the RFC affects the ALJ's ultimate decision regarding disability. [4]

## II.   CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is REMANDED. On remand, the ALJ should address what, if any, additional limitations should be added to the RFC regarding Plaintiff's PTSD, and whether any change to the RFC affects the ALJ's ultimate decision regarding disability. The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated:   **September 8, 2023**                    /s/ *Erica P. Grosjean*
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[4] In light of this finding, the Court does not address Plaintiff's other arguments regarding the ALJ's evaluation of Plaintiff's subjective symptom testimony or the ALJ's Step Five analysis.